**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darnell Gaddis, et al., | No. CV-24-02683-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| US Bank NA, | |
| Defendant. | |

Defendant U.S. Bank National Association ("US Bank" or "Defendant") filed a Motion to Dismiss *pro se* Plaintiffs Darnell Gaddis and Kahala Gaddis's (collectively, "Plaintiffs") Second Amended Complaint ("SAC") for failure to state a claim (Doc. 45). Plaintiffs initially did not file a response, and the Court, therefore, issued an Order to Show Cause (Doc. 47). Plaintiffs then filed a Response to the Order to Show Cause and Defendant's Motion to Dismiss (Doc. 48), and Defendant filed a Reply (Doc. 49).

After Defendant filed its Reply, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss (Doc. 50). Defendant, consequently, filed a Motion to Strike the Response (Doc. 51). Defendant's Motion to Strike is fully briefed. (*See* Docs. 52, 53).

## I.   Background

Plaintiffs allege they sent a Defendant cease-and-desist letter instructing it to stop all communications with them on April 26, 2022. (Doc. 42 at 2, 7-11). On April 29, 2022, Defendant allegedly mailed a letter confirming that it received the cease-and-desist letter.

(*Id.* at 2, 14).  Notwithstanding its confirmation, Plaintiffs allege that Defendant then called Plaintiffs twenty-seven times from September 16, 2024, to October 7, 2024.  (*Id.* at 2, 16-18).  Plaintiffs allege "Defendant's calls occurred with excessive frequency [. . .] despite Plaintiffs' clear and repeated verbal revocations, made during live conversations on September 17, 19, and 23, 2024.  Additionally, Plaintiffs recorded subsequent calls with Defendants' agents on September 24, October 2, and October 4, 2024."  (*Id.* at 2).  "No voicemails were left, yet the excessive volume, repetitive nature, and timing of the calls caused significant disruption to Plaintiffs' daily lives, interfering with their peace of mind, sleep, and ability to receive important communications."  (*Id.*).  "When Plaintiffs returned the phone calls using the number displayed on their caller ID, the caller ID name appeared as either 'Debt Collector Credit Agency' or 'Bank Card Prepaid Debit Card.' "  (*Id.*)  Upon returning the call, Plaintiffs allegedly received an automated greeting that stated " '[t]hank you for calling Card Member Services.'"  (*Id.*)  At some point after the greeting, Plaintiffs says they spoke to a live agent who verified their personal information.  (*Id.*)  After Plaintiffs disclosed their information to the agent, the agent informed them the call was being recorded and was an attempt to collect a debt issued by Defendant.  (*Id.*)  Plaintiffs allege that these calls only ended when the current legal action was brought.  (*Id.*)

Plaintiffs originally filed suit on October 7, 2024, and have since amended their Complaint twice.  On July 11, 2025, Plaintiffs filed their SAC (Doc. 42), bringing claims under the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") against Defendant.  (*Id.* at 1).  Defendant now moves to dismiss Plaintiffs' SAC for failure to state a claim for relief.  (Doc. 45).

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  Complaints must make a short and plain statement showing that the pleader is entitled to relief for their claims.  Fed. R. Civ. P. 8(a)(2).  This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

- 2 -

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will [. . .] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When considering a motion to dismiss based on failure to state a claim, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "However, [courts] need not. . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022) (internal citations and quotes omitted).  Where there is a conflict between allegations in the complaint and exhibits attached to the complaint, the exhibits control.  *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011); *see also Friess v. Shellpoint Mortg. Servicing*, 2022 WL 742728, at *4 n.5 (D. Ariz. Mar. 11, 2022) (finding plaintiff failed to state a claim when allegation is directly contradicted by defendant's attached evidence) (citing *Steckman*

*v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)).

## III.    Discussion

Defendant moves to dismiss Plaintiffs' FDCPA and TCPA claims, arguing that Plaintiffs do not and cannot establish vital elements of their claims.  (*See* Doc. 45 at 3–8). Plaintiffs disagree, asserting that the "false name" exception applies to its FDCPA claim and that whether Defendant used an automated dialing system is a factual question not appropriate to consider at this stage.  (Doc. 45 at 2).  The Court will consider each of Plaintiffs' claims in turn.

### A.    FDCPA Claim

Defendant asserts that it is not a third-party debt collector and is therefore not subject to the FDCPA.  15 U.S.C. § 1692a(6).  Plaintiffs assert that Defendant, by making use of a different name, is effectively a debt collector. (Doc. 42 at 3).  For the following reasons, the Court finds that Plaintiffs have not sufficiently plead their claim.

The FDCPA was enacted to "to eliminate abusive debt collection practices by debt collectors [. . .] and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To achieve this end, the FDCPA strictly regulates the conduct of debt collectors by both imposing affirmative duties and prohibiting abusive practices.  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060–61 (9th Cir. 2011). It proscribes "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.

Nonetheless, §1692d only applies to the actions of debt collectors as defined by § 1692a.  15 U.S.C. § 1692d ("A *debt collector* may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.") (emphasis added).  Whether an entity qualifies as a debt collector is a question of law.  *See Schlegel v. Wells Fargo Bank, NA,* 720 F.3d 1204, 1208 (9th Cir. 2013) ("Because these prohibitions apply only to "debt collector[s]" as defined by the FDCPA, the complaint must plead 'factual content that allows the court to draw the reasonable inference' that Wells Fargo is a debt collector."); *see also Alston v. Midland*

*Credit Mgmt. Inc.*, No. CV-25-02196-PHX-DWL, 2025 WL 2444056, at *3 (D. Ariz. Aug. 25, 2025) (dismissing plaintiff's claim for failing to allege that Defendant was a debt collector); *see also Gayford v. Flagstar Bank FSB*, 2014 WL 11662796, at *3 (D. Ariz. Oct. 10, 2014) (dismissing plaintiff's claim for failing to factually allege defendant was a debt collector).   The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Debt collectors are implicated under the FDCPA, while creditors who seek only to collect on their own debts generally are not.  15 U.S.C. § 1692a(4),(6)(F).

Plaintiffs allege that Defendant, "the original creditor," is nonetheless liable under the FDCPA here because "it acted as a 'debt collector' within the meaning of 15 U.S.C. §1692a(6) by operating a dedicated internal collections department under the name "Card Member Services." (Doc. 42 at 3).   Under the FDCPA, a creditor only constitutes a "debt collector" if "in the process of collecting [its] own debts, [it] uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  This is the "false name" exception.  "The false-name exception has three components: a creditor must (1) use a name other than its own (2) in a way that would indicate a third person is attempting to collect its debt (3) in the process of collecting its own debt." *Pinson v. JPMorgan Chase Bank, Nat'l. Ass'n.*, 942 F.3d 1200, 1209 (11th Cir. 2019); 15 U.S.C. § 1692a(6).

Defendant argues that Plaintiffs' "allegations do not meet the exception" and that the "allegations and the SAC exhibits defeat any argument that Plaintiffs were fooled into believing that 'Cardmember Services' was anything other than a department within U.S. Bank charged with servicing credit cards." (Doc. 45 at 5–6, 8).

Courts in the Ninth Circuit use a "least sophisticated debtor" standard in assessing whether debt collector communications violate the proscriptions of § 1692e, and the Court finds it appropriate to apply this standard  to determine a debtor's perception under

1692a(6)..   *See e.g.*, *Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 775 (9th Cir. 2017) (affirming the standard for § 1692e); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982) (establishing the standard for § 1692g).   The "least sophisticated debtor" standard "is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naive,' particularly when those individuals are targeted by debt collectors." *Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1062 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000)).   Thus, although it is still an objective one, "the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988).   However, the least sophisticated consumer standard prevents liability for idiosyncratic, bizarre, or unreasonable assumptions regarding the collection action "by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996); *Afewerki*, 868 F.3d at 775; *Pinson*, 942 F.3d at 1209.   *See also Gonzales*, 660 F.3d at 1062 (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008), for same proposition).

Plaintiffs allege two ways Defendant misled them into thinking it was a third-party debt collector.   First, Plaintiffs say the automated greeting they received when they returned Defendant's calls identified itself as "Card Member Services" instead of US Bank. (Doc. 42 at 3).   Second, Plaintiffs say that Defendant used two caller IDs, "Debt Collector Card Agency" and "Bank Card Prepaid Debit Card," neither which were Defendant's name.  (Doc. 42 at 3).   The Court will examine each of these allegations.

### 1. Automated Greetings

Plaintiffs first allege that when they would return calls to the number on their caller ID, an "automated voice stated: 'Thank you for calling Card Member Services.'" (*Id*. at 3). Plaintiffs say "[a]t no time did the greeting identify U.S. Bank, nor did it disclose that 'Card Member Services' was U.S. Bank." (*Id*.)   Plaintiffs' own Exhibits, however, contradict these allegations.

- 6 -

Plaintiffs characterize Exhibit E to the SAC as a "Transcription of recordings related to the unsolicited calls." (Doc. 42 at 19). Those transcripts reflect that customer service representatives state the calls were coming from US Bank, ask Plaintiff Gaddis if she had any other accounts with US Bank, and assure her that she "shouldn't receive any more calls from US bank." (*Id*. at at 21 ("And this is a us [sic] bank card"), 24 ("We were calling from us [sic] bank."), 25, 28). Plaintiffs were promptly informed of the caller's identity shortly after the automated greeting. (Doc. 42 at 2). Thus, even if the automated greeting was initially misleading, Plaintiffs' exhibits indicate that the customer agent resolved that uncertainty when Plaintiffs returned the calls. *Contrast with Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (holding personnel's failure to identify as creditor's employees when receiving calls was deceptive because it prevented debtors from discovering the nature of their debt).

Plaintiffs' Exhibit B is an April 29, 2022, letter on US Bank letterhead, instructing Mr. Gaddis to mail or fax any revocation of his verbal cease and desist request to "Cardmember Service."[1] (Doc. 42 at 14). This letter is signed by Cardmember Service, but denotes at the bottom that US Bank is "the creditor and issuer". (*Id*. ("The creditor and issuer is [sic] U.S. Bank National Association")). Even if the least sophisticated consumer believed "Cardmember Service" was a third party, this misunderstanding would have been dispelled by the letterhead and the text at the bottom of the letter. *Contrast with Maguire,* 147 F.3d at 236 (holding that prior correspondences were insufficient because stationary, return address, and text all failed to indicate "Debtor Assistance" was part of defendant). These Exhibits contradict Plaintiffs assertion that they were fooled into believing that someone other than US Bank was trying to collect on its debt.

### 2. Automated Caller Identification

Plaintiffs further allege that the use of two distinct caller IDs, "Debt Collector Credit Agency" and "Bank Card Prepaid Debit Card," led Plaintiffs to believe multiple entities

---

[1] Plaintiffs transcribe this name as "Card Member Services" in the SAC. (*See e.g.* Doc. 42 at 2). The Court finds this transcription distinction negligible.

were attempting to contact them.  (Doc. 42 at 3).  But under the circumstances as alleged by Plaintiffs, the fact that the caller identifications failed to indicate US Bank was calling does not indicate a third person was attempting to collect on the debt.  Plaintiffs' own allegations acknowledge that when these calls were returned, the receiver identified themselves as US Bank employees shortly after the call began.  (*Id.* at 2).  As discussed above, even if the initial unanswered calls raised questions as to who was calling on the debt, Plaintiffs' exhibits indicate that the customer agent resolved that uncertainty when Plaintiffs returned the calls.  *Contrast with Maguire* 147 F.3d at 236 (holding personnel's failure to identify as creditor's employees when receiving calls was deceptive because it prevented debtors from discovering the nature of their debt).  Even Plaintiffs' statements to the customer service representative indicate that despite the different caller IDs, they knew these calls were from the same caller.  (Doc. 42 at 2 ("Plaintiffs' clear and repeated verbal revocations of consent, made during live conversations on September 17, 19, and 23, 2024"); at 21 ("And so I called yesterday after receiving multiple calls"); *Id.* at  24 ("You guys keep calling me every single day."); at 28 ("I've had multiple conversations about not calling my number.")).  *Id.*  Therefore, Plaintiffs cannot sustain a claim under §1692a(6) based on the caller ID.

Under the circumstances alleged by Plaintiffs in their SAC, the least sophisticated debtor would have understood the calls they were receiving were from creditor US Bank to collect on an outstanding balance.  The false-name exception does not apply such that Defendant can be liable under the FDCPA as a third-party debt collector.  Moreover, as Plaintiffs' allegations are contradicted by their own exhibits and Plaintiffs' have twice amended their Complaint, the Court finds further amendment would be futile.  Plaintiffs' FDCPA claim is therefore dismissed with prejudice.  *Cf. Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (finding dismissal of a claim that could not meet the reasonable consumer standard was not in error).

### B.     TCPA Claim

Plaintiffs also allege that Defendants violated the TCPA, specifically 47 U.S.C.

§ 227(b)(1)(A), which prohibits the use of "any automated telephone dialing system or an artificial or prerecorded voice" used to make non-emergency calls or calls without prior express consent. Defendant argues that Plaintiffs' claim should be dismissed because they fail to allege that Defendant utilized an automatic telephone dialing system ("ATDS"). (Doc. 45 at 3–4). Plaintiffs make three counter allegations: (1) that the question of whether Defendant made use of an ATDS is a factual determination (Doc. 42 at 2), (2) because they revoked their consent, any calls were presumptively unlawful, regardless of the method or technology used (*id.*), and (3) that the calls were preceded by a "two-to-three second pause, indicating the use of an autodialer" and that "several were placed in rapid succession, consistent with predictive dialing" (Doc. 48 at 2). The Court will address each of these assertions individually. The Court notes that a complaint is not an appropriate place to raise arguments or cite case law. However, the Court will briefly address Plaintiffs' cited cases where they are relevant.

### 1. Plaintiffs must allege the use of ATDS at the pleading stage.

Plaintiffs argue that "the specific capabilities of Defendant's call system—whether it qualifies as an ATDS—are factual issues appropriate for discovery, not dismissal." (Doc. 42 at 2). Plaintiffs cite *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *4 (N.D. Cal. 2015) to support this claim. (*Id.*) This citation does little to help Plaintiffs, however. The *Meyer* plaintiff did allege the use of an ATDS, with evidence such as the fact that a message was issued *en masse* and contained a request to opt-in. *Meyer*, 2015 WL 431148 at *4 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Thus, the *Meyer* court necessarily did not find that plaintiffs were not required to allege the use of an ATDS. Instead, it held that the allegation needs to be plausible to survive a motion to dismiss. *Id.* The Ninth Circuit has been clear that a valid TCPA claim requires plaintiff to allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 804 (9th Cir. 2017) (internal citations and quotations omitted). Plaintiffs cannot file a lawsuit without supporting facts in the hope of

later discovering facts to support their theory. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (holding the court cannot condone the use of discovery as a 'fishing expedition' when plaintiff has only gross speculation). Rather, Plaintiffs must plead sufficient, supporting facts that Defendants used an ATDS in their SAC, and they have failed to do so here.

**2. Revocation of consent does not render calls presumptively unlawful.**

Plaintiffs claim that "[t]he core issue is that Defendant made repeated calls after consent had been revoked," and that, after consent is revoked, "any subsequent calls are presumptively unlawful under the TCPA, regardless of method or technology used. (Doc. 42 at 2). In the SAC, to support this argument, Plaintiffs cite *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1040 (9th Cir. 2017). In their Response, Plaintiffs cite to *Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242 (11th Cir. 2014). (Doc. 48 at ¶13). Neither of these cases support Plaintiffs' assertions, however. *Van Patten* does not support the premise that the method or technology used is irrelevant, because there both parties agreed the defendants made use of ATDS. *Van Patten*, 847 F.3d at 1043. Like *Van Patten*, *Osorio* does not state that the use of technology is irrelevant, because neither party contests the use of ATDS. *Osorio*, 746 F.3d 1242 at 1249 (defendant argued autodialing was prohibited only when the called party was charged for the call). Plaintiffs assertion that consent is the primary and effectively only factor runs counter to the plain language of the statutory text, which lists consent as one of three required elements. 47 U.S.C. § 227(b)(1)(A); *see also Los Angeles Lakers, Inc.*, 869 F.3d at 804 (listing the required elements for a pleading under the TCPA).

**3. Plaintiffs' additional information is insufficient to allege a TCPA claim.**

In their Response, Plaintiffs make additional allegations to support their TCPA claim. (Doc. 48 at 2). These allegations are not present in their SAC and cannot cure the deficiency in the operative pleading. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (holding that when considering Rule 12(b)(6) dismissal the court cannot "look beyond the complaint to a plaintiff's moving papers.") (citing *Harrell v.*

*United States*, 13 F.3d 232, 236 (7th Cir.1993)).  However, the Court will analyze this allegation because it is pivotal to Plaintiffs' potential leave to amend.

Plaintiffs' assert two claims in their Response: (1) that the presence of a brief pause indicates the use of an automated dialer; (2) that several calls were placed in rapid succession, consistent with predictive dialing. (Doc. 48 at 2).  The Supreme Court has held that an automated dialer alone is not the same as the sort of ATDS intended to be prohibited by TCPA.  *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405—07 (2021) (holding that the TCPA does not include equipment that does not use a random or sequential number generator); *see also Borden v. eFinancial, LLC,* 53 F.4th 1230, 1235 (9th Cir. 2022) (holding that "using a random or sequential number generator to select from a pool of customer-provided phone numbers would not cause the harms contemplated by Congress.").  The Supreme Court held that expanding the definition of ATDS to include any machine that could predictively or automatically dial would inflict the TCPA on ordinary "cell phone owners in the course of commonplace usage, such as speed dialing or sending automated text message responses."  *Facebook*, 592 U.S. at 406.  Plaintiffs' allegations must therefore include the use of sequential or random number telephone generation.  *See Borden*, 53 F.4th at 1233 (affirming that a pleading must allege the use of a random telephone number generator to plausibly plead a violation of the TCPA). Plaintiffs do not allege the use of random numbers at any point in their SAC. In fact, Plaintiffs' SAC discredits the assertion that Defendant was calling numbers at random. Upon returning the call, Plaintiffs were informed that Defendant was seeking a specific debt from them.  (Doc. 42 at 2).  This is more in line with *Borden*, where the plaintiff provided the defendant with his phone number and then received marketing messages from the defendant.  *Borden*, 53 F.4th at 1232.  The plaintiff in *Borden* contended that the use of random number generator at any point in the call was a violation of the TCPA. *Id.* at 1233. The *Borden* court rejected that contention noting that "an autodialer must randomly or sequentially generate telephone numbers, not just any number."  *Id.*  The *Borden* court held that randomly selecting a number from a preproduced list was not a violation of the

TCPA. *Id.* at 1236. Plaintiffs allege even less randomness, only alleging the use of predictive or automatic dialing to recover a particular debt. (Doc. 42 at 2; Doc. 48 at 2). Plaintiffs have failed to sufficiently allege the use of an ATDS, even considering the new allegations presented in their Response.

### 4. Conclusion on the TCPA Claim.

Because Plaintiffs do not sufficiently allege the use of an ATDS in their SAC, they cannot maintain their claim under 47 U.S.C. § 227. (Doc. 42 at 2). Plaintiffs have already amended their complaint in an attempt to cure this defect, but have failed to do so. Plaintiffs' SAC provides evidence that the calls were not random or sequential, but in fact directed at existing customers. The Court concludes that further amendment would be futile and will therefore dismiss the SAC with prejudice. *See Webb*, 999 F.3d at 1204 (affirming dismissal with prejudice when plaintiff is entirely reliant on discovery to allege his claims); *see also Jovanovic v. SRP Invs. LLC*, No. CV-21-00393-PHX-JJT, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021).

## IV.    Motion to Strike

Following Defendant's Reply to its Motion to Dismiss, Plaintiffs filed a "Response in Opposition to Defendant's Motion to Dismiss Second Amended Complaint" (Doc. 50). Notwithstanding the filing's title, Plaintiffs had already filed a Response (Doc. 48) to Defendant's Motion, and briefing on Defendant's Motion was complete upon the filing of Defendant's Reply (Doc. 49). Plaintiffs' filing was thus an unauthorized sur-reply.

Plaintiffs' Sur-Reply prompted Defendant to file a Motion to Strike Plaintiffs' improper surreply. The Court agrees that the filing is an improper surreply as no leave was granted to file it. *Moten v. U.S. A.F., Bd. for Correction of Mil. Records*, 2019 WL 357901, at n.1 (D. Ariz. 2019) ("Neither the local rules of the District of Arizona nor Fed. R. Civ. P. 7 authorize the filing of a surreply without first being granted leave of the Court."). However, because the Court recognized the filing as an unauthorized surreply, it did not consider the filing in rendering its decision. In consequence, Defendant's Motion to Strike (Doc. 51) is denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 45) is **GRANTED with prejudice.** The Clerk of Court is directed to enter judgment accordingly and close this matter.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 51) is **DENIED** as moot.

Dated this 24th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge